6976

BLOHME v. SCHMANCKE.

REVIVAL OF LIEN OF JUDGMENT.—Summons served in 1907 to revive lien of judgment obtained in 1892, but not entered on "abstract of judgments" until 1897, and then on order of Circuit Court on *ex parte* application of plaintiff, comes too late.

Before WATTS, J., Charleston, August, 1907. Affirmed.

Summons to revive lien of judgment by J. C. Blohme, assignee of Cramer & Blohme in cause of Cramer & Blohme against C. L. Schmancke. From order refusing revival, Blohme appeals.

*Mr. George H. Momeier,* for appellant, cites: *Until a judgment is entered there is no judgment:* 43 S. C., 246; 40 S. C., 255; 27 S. C., 477; 14 S. C., 571; 21 S. C., 259; 28 S. C., 78; 10 S. C., 278. *Meaning of date of "original entry:"* 78 S. C., 120. *Revival has same force and effect as former recovery:* 71 S. C., 250.

*Messrs. John C. D. Schroder* and *Nathaniel B. Barnwell,* contra, cite: *Mere indorsement of order does not make default judgment:* 50 S. C., 498; 6 Ency. P. & P., 57; 23 Cyc., 471; 14 S. C., 42. *Can judgment be entered at any time?* Code of Proc., 309; 19 S. C., 501; 2 Shern., 308, 315; 1 Black on Judg., sec. 130; 3 Hill, 4; Riley, 199; 3 McC., 22; 74 N. W., 257; 103 N. W., 1062; 91 N. W., 601; 24 Am. Dec., 750. *What was effect of entry under order of Judge Gary:* Code 1902, 2733, 2736; 47 S. C., 31; 54 S. C., 400; 21 S. C., 362; 7 S. C., 235. *Was plaintiff guilty of laches:* 43 S. C., 441; 53 S. C., 574; 14 Rich. Eq., 174; 11 Rich. Eq., 33; 18 Ency., 119; 92 N. W., 408. *It is duty of judgment creditor to have judgment entered:* 17 Ency., 775.

July 25, 1908. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The plaintiff represents that he and one A. F. C. Cramer were copartners as merchants in the city of Charleston, S. C., in the year 1890, that in September of that year they brought an action against C. L. Schmancke for the sum of $4,205.03, and no answer, demurrer or notice of appearance was served by said Schmancke, and that on the 13th day of December, 1892. the Hon. T. B. Fraser, as Circuit Judge, signed an order which is indorsed on the complaint of the plaintiff for a judgment thereon. That the order for judgment of the said Hon. Thomas B. Fraser was never enrolled in the clerk's office of Charleston county, S. C., nor did the same appear on the "Abstract of Judgments." Without any

notice to defendant the plaintiff obtained at chambers an *ex parte* order on the 22d day of June, 1897, from his Honor, Judge Ernest Gary, as follows:

"On motion of George H. Momeier, it is ordered that he be, and is hereby, substituted as the attorney of record in the above entitled cause in the place and stead of J. Ancrum Simons, with leave to enter up the judgment rendered in the said cause on the 13th day of December, 1892, and move the clerk of court to issue execution thereon. Ernest Gary, Presiding Judge. At Chambers, Charleston, S. C., June 22, 1897."

That on the 6th day of July, 1897, the plaintiff, A. F. C. Cramer, assigned his interest in said judgment to his coplaintiff, J. C. Blohme; that on January 22, 1907, the following summons to show cause was served on the defendant, and filed in the office of the clerk of the court on the 18th day of February, 1907:

"To the defendant above named:

"Whereas, an action in the Court of Common Pleas for Charleston county, between A. F. C. Cramer and J. C. Blohme, copartners, as Cramer & Blohme, plaintiffs, and the defendant above named, judgment was duly entered on the 22d day of June, 1897, in the office of the clerk of Court of Common Pleas for said county, in favor of the said plaintiffs against the said defendant, in the sum of four thousand two hundred and twenty-three 18-100 dollars, as appears by Judgment Roll No. 21096, filed and entered in the office of the clerk of said court; and

"Whereas, execution was duly issued on said judgment on the 22d day of June, 1897, and the period of ten years during which said judgment constitutes a lien upon the real estate of the said judgment debtor in the county has nearly expired;

"And whereas, there is actually due and remaining unpaid on said judgment the sum of four thousand two hundred and twenty-three 18-100 dollars, with interest on four thousand two hundred and five 03-100 dollars from December

13, 1892, and it is desired to have said judgment renewed for a further period of ten years, in accordance with the provisions of section 309, subdivision 2, of the Code of Civil Procedure of the State of South Carolina, as revised in 1902;

"And whereas, A. F. C. Cramer, on the 6th day of July, 1897, duly assigned his interest in the said judgment to the said J. C. Blohme, who is now the owner and holder thereof;

"Now, therefore, you are summoned and required to show cause to the Court of Common Pleas for the County of Charleston, within twenty days after the service hereof, exclusive of the day of such service, if any you can, why the said judgment should not be revived according to law in favor of the said J. C. Blohme; and if you fail to show such cause within the time aforesaid, the said J. C. Blohme, plaintiff herein, will apply to the Court for a decree reviving the said judgment according to law. George H. Momeier, Plaintiff's Attorney.

"Dated Charleston, S. C., January 22d, 1907."

That the following return was made to said summons by C. L. Schmancke:

"The defendant, C. L. Schmancke, herein, in answer to the summons to show cause why a judgment of the Court of Common Pleas for Charleston county, alleged to have been entered in said court on the 22d day of June, 1897, should not be revived for cause, respectfully shows:

First. "That there is no valid judgment existing in favor of plaintiff and against defendant, as alleged, in that the alleged judgment was taken by default without the filing of proof that no appearance or answer or demurrer had been served in said action, as required by law.

Second. "That the entry of judgment alleged to have been made on the 22d day of June, 1897, is null and void, in that the same was not entered within the period of a year and a day from the date of said judgment, and no reason was shown for said delay.

Third. "That more than ten years have now elapsed since the date of such judgment and the time when entry thereof should have been made, and the lien thereof, if any, has been lost.

Fourth. "That the judgment alleged to have been entered upon the 22d day of June, 1897, is null, frustrate and of non-effect, in that the said judgment was recovered upon certain void notes alleged to have been executed by this defendant in favor of Cramer & Blohme; that the said notes were given by this defendant in favor of Cramer & Blohme, in whole or in part, for money lost by reason of contracts entered upon between this defendant and the said A. F. C. Cramer and J. C. Blohme, copartners, as Cramer & Blohme, whereby the said Cramer & Blohme, acting as the agents of this defendant, contracted for the sale at future times of grain, to wit: under contracts by the said Cramer & Blohme, as agents or brokers of this defendant, on or about the 4th day of January, 1886, whereby the said Cramer & Blohme undertook to sell twenty thousand (20,000) bushels of wheat for delivery in May, 1886, and also under contracts made by said Cramer & Blohme, as agents or brokers as aforesaid, on or about the 30th day of April, 1886, whereby the said Cramer & Blohme undertook to sell twenty thousand (20,000) bushels of wheat for delivery in June of said year; that at the time of making such contracts and sales neither this defendant nor the said Cramer & Blohme, nor any of of them, was the owner or assignee of the wheat contracts to be sold and transferred at a future time as aforesaid, nor of any part thereof, nor were they or any of them authorized by the owner or assignee thereof, nor by his duly authorized agent, to make or enter into such contract, bargain or agreement for the sale or transfer of such grain; and it was not at the time of making of such contracts, bargains or agreements by the said Cramer & Blohme, as agents or brokers as aforesaid, the intention of them, or any of them, or of this defendant, that the grain so agreed to be sold and transferred should be actually delivered in kind, nor was there

ever any actual delivery in kind of said grain or any part thereof to the party or parties contracting to receive the same at the time mentioned and specified in any of the said contracts, bargains or agreements made for the transfer and delivery of the same, nor was there any delivery in kind at any time, but the said contracts were naught but gambling in grain futures, and as such utterly null and void.    John C. D. Schroder, Attorney for Defendant."

The summons and the return thereto came on to be heard before Judge R. C. Watts, who passed the following order on August 12, 1907:

"This cause came up before me on a summons to show cause why a lien of judgment should not be renewed.    On December 13, 1892, judgment was rendered in this case, but no entry was made of the same at that time.    At that time J. Ancrum Simons was plaintiff's attorney.

"On June 22d, 1897, Mr. Momeier, by an order of Judge Gary, was substituted as attorney in place of Mr. Simons, and leave given to enter up judgment.    This order was *ex parte* and defendant had no notice of it.    Thereupon judgment was entered up and execution issued.    Now an effort is made to revive lien of judgment.    I cannot see how the plaintiff can take advantage of his laches to the detriment of defendant.    He should have entered the judgment in a reasonable time; having allowed over ten years to elapse since he obtained judgment, he cannot now by summons revive lien of the judgment.    It is, therefore, ordered, decreed and adjudged that the summons to revive lien of judgment herein be dismissed, with costs."

From this order of Judge Watts the plaintiff has appealed upon four grounds, which we will now consider in their order:

1. "Because his Honor erred in deciding that the plaintiff herein is seeking to take advantage of his laches to the detriment of defendant in not having entered his judgment in a reasonable time, and, having allowed over ten years to elapse since he obtained judgment, cannot now revive same; the

error being: (a) that there is no law requiring a judgment to be entered within a special time from the date of the order for judgment; (b) the law requires the clerk of the court to enter the judgment and not the plaintiff; (c) that the party injuriously affected by the failure to enter a judgment is the plaintiff and not the defendant, for the reason that before the entry of same no rights or benefits accrue, because before entry a plaintiff has neither legally nor technically a judgment, and therefore, no lien, and the failure to make entry is not only to the detriment of plaintiff and not defendant, but to the latter's advantage."

The judgment in this case was rendered by his Honor, T. B. Fraser, in 1892. The plaintiff sought to revive his judgment in 1897. This act, so far as the plaintiff is concerned, was legal, although Judge Gary's order turned out to be useless, for the simple fact that the act required that when a judgment was revived notice should be given of the time and place to the party defendant, or his personal representative, in case of his death, and in the case at bar, no notice was extended to any of such parties, and while the law has wisely restricted the use of objection or the invalidation of such process to the defendant himself, still it's the defendant here that is raising the objection.

In the case of *Mason, etc.,* v. *Music Co.,* 45 S. C., 11, 14, 22 S. E., 755, it is held: "A judgment as defined by the Code is the final determination of the rights of the parties in the action. This final determination of the rights of the parties in the action takes place when the court does all that it is required to do in determining the rights, and it is not the less a judgment because certain requirements of the statute have to be complied with, so as to enforce it by execution, give it a lien on real estate, make it competent evidence or effectual for other purposes."

In the case of *Clark* v. *Melton,* 19 S. C., page 498, the Court says: "To give force and effect, however, to this judgment it is true that a formula was required to be prepared and filed in the clerk's office, and to be entered in the

book entitled 'Abstracts of Judgments,' and under an act of
the General Assembly the clerk in whose office this formula
was filed was required to date it and indorse his official
signature. It will be observed, however, that this formula,
etc., did not constitute the judgment of the Court, nor did
the date of the signing by the clerk with his official signature
add anything to its intrinsic character. The judgment
issues from the Court, not from the attorneys or the clerk;
it precedes a formula, and is authority for which the formula
is prepared; but the formula constitutes no part of the judg-
ment. It is only the evidence of the existence of a judgment
that enables the plaintiff to have it enforced. The judgment,
as we have said, is the judicial determination of the rights
of the parties, but it is not self-operative; it cannot enforce
itself; it becomes necessary, therefore, that some machinery
should be adopted to secure to the successful party the fruits
of his recovery."

Mr. Black, in vol. I, on judgments, says: "That the ren-
dition of a judgment is the judicial act of the Court in pro-
nouncing the sentence of law upon the facts in controversy
as ascertained by the pleadings and verdict. The entry of
a judgment is a ministerial act, which consists in spreading
upon the record a statement of the final conclusion reached
by the Court in the matter, thus furnishing external and
incontestable evidence of the sentence given, and designed to
stand, as a perpetual memorial of its action. It is the for-
mula, therefore, that is the effective result of the litigation.
In the nature of things a judgment must be rendered before
it can be entered. And not only that, but though the judg-
ment be not entered at all, still it is none the less a judgment.
The omission to enter it does not destroy it nor does its
vitality remain in abeyance until it is put on record."

But as Judge Gary said in rendering the judgment in
*Mason, etc.,* v. *Music Co., supra,* "The failure of the judg-
ment creditor to enter his judgment in the book of 'Abstract
of Judgments' before issuing execution to enforce the same,
was an irregularity, and the Circuit Judge was not in error

in granting the order upon which the defendant has appealed."

Thus it will be seen that the rendering by Judge Fraser was a judicial judgment, which is not affected by the failure of the clerk, or any one else, to enter Judge Fraser's judgment in the "Abstract of Judgments." The enforcement of that judgment was a ministerial act; the order made by Judge Ernest Gary, so far as the defendant was concerned, was of no effect, although his conduct was valid, so far as the plaintiff was concerned. It was not in plaintiff's power to disregard Judge Ernest Gary's order until he had taken the proper measures to render it invalid.

The action to be taken by the plaintiff to render Judge Fraser's judgment anything else than a final judgment was conclusive. The plaintiff was bound to regard Judge Fraser's judgment as a final judgment; therefore, it was not in plaintiff's power to prevent the operation of Judge Fraser's order other than as a final judgment on the 13th day of December, 1892, and more than ten years having elapsed before his summons to revive before Judge Watts was heard, rendered it illegal, so far as the defendant was concerned, because more than ten years had elapsed before the summons to revive was issued.

Hence, this first exception must be overruled.

2. "Because his Honor erred in deciding that as plaintiff had allowed over ten years to elapse from the obtaining of the order for the judgment, he cannot now seek to revive the lien of judgment; whereas, he should have held that this being an application to revive the lien of the judgment, and the law providing that such lien is created only by entry and continues ten years therefrom, and that application for revival may be made by service of summons at any time within ten years from the date of original entry, therefore, the time of obtaining the order for judgment has no bearing upon the question of revival, but the sole question is whether or not the application therefor was made within ten years from the date of the original entry of the judgment."

The second exception is disposed of in what we have held in regard to the first exception.

3. "That his Honor erred in not deciding that as the date of the original entry of the judgment in this case was June 22, 1897, and that the summons for revival upon defendant was served January 22, 1907, or within ten years as provided by statute, the plaintiff was entitled to an order reviving said judgment, and that his Honor erred in not granting such order."

It was not error in Judge Watts when he decided that the date of the judgment was the 13th of December, 1892, and not June 22, 1897, more than ten years before August 12, 1907, and therefore, it was not in plaintiff's power to renew said judgment by service of summons. This exception is overruled.

4. "That his Honor erred in not holding that there was no good cause shown why the said judgment should not be revived and, therefore, erred in not decreeing that the said judgment should be revived."

His Honor did not err when he held that there was no good cause shown why the judgment should be revived.

This exception is, therefore, overruled.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES GARY, JONES AND WOODS *concur in the result.*